1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMPSON PERFORMANCE PRODUCTS, INC., a Texas corporation, Plaintiff, v. NECKSGEN INC., a California corporation, Defendant. | Case No.:  3:18-cv-01260-BEN-MDD **CLAIM CONSTRUCTION ORDER** |

This litigation involves alleged patent infringement.  Plaintiff Simpson Performance Products, Inc. ("Simpson") alleges Defendant NecksGen, Inc. ("NecksGen") has infringed on U.S. Patent Number 9,351,529 ("the '529 Patent") titled "Multi-Point Tethering System for Head and Neck Restraint Devices," issued on May 31, 2016, through direct infringement, induced infringement, and contributory infringement.

According to Simpson, NecksGen offers to sell and sells two accused devices, the REV head and neck restraint and the REV2LITE head and neck restraint, which infringe on the '529 Patent.  Compl., ECF No. 1, ¶¶ 20, 21.

In accordance with Local Patent Rule 4.2, the parties identified the following terms for construction: (1) A restraint device having a system of tethers, and a helmet cooperating with the tethers, for controlling a driver's head during operation of a vehicle, comprising: (preamble), (2) tether, (3) attached, (4) jointly attached, (5), jointly attached

1

to the helmet at a single attachment point on each respective side of the helmet, (6) support member, (7) being disposed between shoulder belts of a seat belt assembly, (8) principally without being laterally aligned, and (9) helmet.

The parties submitted their proposed claim construction briefs in accordance with the Court's scheduling order.  *See* ECF Nos. 45, 46, 48, 50.  On May 24, 2019, the parties submitted a joint Stipulation Regarding Construction of Certain Claim Terms and Joint Request for Inclusion of the Stipulated Constructions in the Claim Construction Order. ECF No. 56.  As good cause for inclusion has been shown, the Court will also consider the matters contained in the Stipulation.

## I.     Disputed Terms

For the reasons set forth below, the Court construes the submitted claim terms from the '529 Patent as follows:

**1.  A restraint device having a system of tethers, and a helmet cooperating with the tethers, for controlling a driver's head during operation of a vehicle, comprising:**

The above language is the preamble language to the '529 Patent's three independent claims, *i.e.,* Claims 1, 8, and 14.  Simpson argues the preamble should be construed as *a restraint device including a system of tethers for use with a driver's helmet for controlling a driver's head during operation of a vehicle*.  Pl.'s Br., ECF No. 46 at 16. NecksGen does not argue for a specific construction of the preamble but does argue the preamble is limiting, requiring the presence of a helmet.  Def.'s Br., ECF No. 45 at 11.

### a.  Construction of the Preamble is Required

Generally, the preamble does not limit the claims, and therefore does not require construction.  *See Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1292 (Fed. Cir. 2015); *Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1358 (Fed. Cir. 2010).  When a patentee "defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention, the preamble is not a claim limitation." *Novatek, Inc. v. Sollami Co.*, 559 F. App'x 1011, 1015 (Fed. Cir. 2014).

However, "[i]f the claim preamble, when read in the context of the entire claim, recites limitations of the claim, or, if the claim preamble is 'necessary to give life, meaning, and vitality' to the claim, then the claim preamble should be construed as if in the balance of the claim." *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999). "Whether a preamble is treated as a limitation is determined by the facts of each case and upon an understanding of what the inventors actually invented and intended to encompass by the claims." *Novatek*, 559 F. App'x at 1015 (*citing Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002)).

Here, construction of the preamble is required to clarify whether "the presence of a helmet is necessary to give meaning to the claims," Def.'s Br., ECF No. 45 at 10, or whether, as Simpson contends, the preamble merely "provides a basis for understanding the purpose and use of the elements and limitations recited in the body of the claim." Pl.'s Br., ECF No. 46 at 17.

### b. Claim Construction of the Preamble

NecksGen argues the claim preamble, "when read in the context of the entire claim, recites the 'helmet' limitation that is necessary to give life, meaning, and vitality to the claim." Def.'s Br., ECF No. 45 at 10. NecksGen argues (1) "the preamble provides proper antecedent basis for the 'helmet limitation'" found in the body of each independent claim, (2) the body of each independent claim requires a helmet "to be present for the tethers to be 'attached,'" and (3) Simpson's prosecution history indicates "Claim 1 required a helmet to be present." *Id.* at 10-11.

Simpson responds that "the totality of the specification" indicates the invention does not require a helmet. Pl.'s Br., ECF No. 46 at 16-17. Instead, Simpson argues, the invention "attach[es] a helmet to a head and neck restraint device and/or seat belt assembly for the purpose of controlling the head and neck of a driver while operating a high performance vehicle." '529 Patent, Col. 4:20-24. In other words, the invention is intended to attach to a helmet, but a helmet is not an essential element of the invention.

While not bound by other courts' constructions of the same patent, this Court finds the reasoning adopted in *Simpson Performance Products, Inc. v. Zamp Inc.*, Case No. 5:16-cv-00157-KDB-DCK, 2019 WL 1052031 (W.D.N.C. Mar. 5, 2019), persuasive. There, the Court reasoned "a helmet is not listed as a separate element following the transitional language 'comprising' in claims 1, 8, and 14." *Id.* at *7. While "a helmet is referenced in the description of *other* enumerated elements…as a means of describing the structure and positioning of those elements," a helmet is not defined as a separate element itself. *Id.* Reading the specification in its entirety confirms for the Court that the invention is intended for use with a driver's helmet. It is not limited to the presence of a helmet.

Accordingly, the Court adopts Simpson's proposed construction of the preamble as *a restraint device including a system of tethers for use with a driver's helmet for controlling a driver's head during operation of a vehicle*.

## 2. Tether

The word "tether," as well as its plural, "tethers," are found in each of the independent claims of the '529 Patent, as well as several of the dependent claims. Simpson argues the word "tether" is explicitly defined in Columns 4:46 – 5:3 of the '529 Patent's specification, and therefore the court has no reason to construe its meaning.

NecksGen urges construction of the word "tether" to mean "any tether, webbing, strap, dashpot, belt, cord, chain, cable, rope, band, or the like, that is adapted to attach a restraint device to a helmet or skull cap, and includes the hardware and components (e.g. rings, loops and clips) thereon that allow the tether to be attached to a helmet, restraint device or seat belt assembly." Def.'s Br., ECF No. 45  at 21.

NecksGen argues the definition in the specification "is confusing, vague, and ambiguous" because the definition "blurs the line between a single tether and tethers (plural)." *Id.* at 19. NecksGen argues Simpson attempts to have "tether" define both a single "tether" and "the entire tethering system," which "consists of three (3) separately

defined and described tethers."  Adopting this position, NecksGen asserts, "would render the term ambiguous and indefinite."  *Id.*

While the parties have stipulated to the meaning of the terms "pair of side tethers," and "rear tether," which NecksGen argues "clearly delineates between the various tethers," this is unpersuasive.  Def.'s Br., ECF No. 45 at 21.  Agreeing to definitions of different specific tethers does not blur the definition of the common term, "tether."[1]

While NecksGen argues its construction comes directly from Simpson's definition in the '529 Patent, the proposed construction substantially limits it.   The Court is reminded "that the specification is 'the single best guide to the meaning of a disputed term,' and that the specification 'acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication.'"  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005) (*en banc*) (*quoting Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).  Here, the Court is satisfied the '529 Patent has assigned its own meaning to the term "tether."

Accordingly, the Court declines to construe the term "tether" as it has already been expressly defined in the '529 Patent as *without limitation, any tether, webbing, strap, dashpot/dashpot containing a controllable rheological fluid such as that disclosed in U.S. Pat. No. 7,155,747 to Gregg S. Baker, belt, cord, chain, cable, rope, band, or the like, that is adapted to attach a restraint device to a helmet. Tether also includes the hardware and components (e.g. rings, loops and clips) thereon that allow the tether to be attached to a helmet, restraint device or seatbelt assembly. Moreover, the term tether includes, without limitation, where the tether has one end attached to a helmet and the other end attached to the restraint device or seat belt assembly (an example of which is side tether 48 of FIG. 1); where the tether is one continuous length having terminal ends available for attaching to a helmet and an intermediate section attached to an embodiment of the*

---

[1] *See also Zamp*, 2019 WL 1052031, at *8 (Finding that the ['529 Patent's] specification precludes an interpretation that suggests every tether must be a separate and discrete strap.)

*restraint device (an example of which is rear tether 18 of FIG. 1); a network of webbing (not illustrated) that wraps over a helmet and which attaches to an embodiment of the restraint device; a tether that attaches a skull cap (not illustrated) to an embodiment of the restraint device; and the other suitable arrangements. It is to be understood that each tether may be comprised of more than one section and that the term tether may include only the tether section that attaches to the support member and/or the entire tethering system that joins the support member to the helmet.*

### 3. Attached

The word "attached" is found in each of the '529 Patent's independent claims, as well as several of the dependent claims.  Simpson argues the word "attached" is explicitly defined in Column 5:6-23 of the '529 Patent's specification and that the Court has no reason to construe its meaning.  NecksGen urges construction of the word "attached" to mean "to be directly or indirectly affixed, coupled, secured, fastened, joined and connected including when components are slidably coupled together without being affixed at a specific location, which includes the use of mechanical fasteners, clips, straps, rigs, adhesive, bonding, hooks, weaving, weaving through a slot, tying, stitching and encircling."

NecksGen argues the definition in the specification "provides a broad, nonconventional, definition to this term."  Def.'s Br., ECF No. 45 at 17.  NecksGen further argues that Simpson's definition of "attached" includes "indirect attachment as shown in [Figures] 1 and 10 where the tethers are attached to a clip, and then the clip is attached to the helmet."  *Id.* at 18.  NecksGen argues its "proposed construction is fulling [sic] consistent with Simpson's definition provided in the specification and provides greater clarity for the factfinder." *Id.*

As discussed above, the Court notes "that the specification is 'the single best guide to the meaning of a disputed term, and that the specification 'acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication.'" *Phillips*, 415 F.3d at 1321 (*quoting Vitronics Corp.*, 90 F.3d at 1582).  Here again, the

Court is satisfied the '529 Patent has assigned its own meaning to the term "attached" and that a fact finder does not need additional clarity in understanding the term as defined.

Accordingly, the Court declines to construe the term "attached" as it has already been expressly defined in the '529 Patent as *"attached" (and its various forms: "attaching", "attachable", "attaches" and "attach") as used herein, includes without limitation affixed, coupled, secured, fastened, joined and connected. Attached also include when components are slidably coupled together without being affixed at a specific location, for example if the tether 18 of FIG. 1 was allowed to slide relative to the mechanical clips 38. A non-exhaustive list of articles, means and/or methods for attaching includes mechanical fasteners, clips, straps, rings, adhesive, bonding, hooks, weaving, weaving through a slot in the support member, tying, stitching and encircling, for example. The term attached does not include where an article is engaged against another article without being coupled together. For example, in FIG. 1 the vehicle's shoulder belts 110 are illustrated as being positioned on and engaged against shoulder portions 16 of the support member 14 but without being attached together*.

### 4. Jointly attached

Having declined to construe the term "attached," the next question is whether the term "jointly attached" should be construed separately from the entire phrase in which it appears, *i.e.*, "jointly attached to the helmet at a single attachment point on each respective side of the helmet." '529 Patent, Cols. 11:48-49, 12:23-24, 12:56-57.

NecksGen argues "the term 'jointly attached' is not defined or discussed anywhere in the specification." Def.'s Br., ECF No. 45 at 11. NecksGen asks the Court to construe the term "jointly attached" to mean "two tethers – a first tether and a second tether – jointly attached." *Id.* at 11. Simpson does not offer its own construction, but instead asks the Court to "construe the entire phrase of which these two words are only a part, i.e., 'jointly attached to the helmet at a single attachment point on each respective side of the helmet.'" Pl.'s Br., ECF No. 46 at 20.

As the parties both dispute and propose construction of the entire phrase, the Court believes a fact finder would be aided most by a construction of the phrase in its entirety and declines to separately construe "jointly attached." [2]

**5. Jointly attached to the helmet at a single attachment point on each respective side of the helmet**

This phrase appears in each of the '529 Patent's independent claims.  Simpson argues this phrase should mean "when attached to the helmet, the rear and side tethers attached to the helmet at a first common attachment location on a first side of the helmet and at a second common attachment location on a second side of the helmet, respectively." Pl.'s Br., ECF No. 46 at 20.  NecksGen argues the phrase should mean "two tethers – a first tether and a second tether – jointly attached to a first side of the helmet and a second side of the helmet."  Def.'s Br., ECF No. 45 at 12.

Simpson argues its construction is consistent with the ordinary and customary meaning of the term as used in the specification, as well as the prosecution history.  Specifically, Simpson asserts that amendments were made to distinguish the invention from prior art.  By contrast, NecksGen argues its construction "builds upon, and incorporates, the terms 'attached'…and 'jointly attached,'" relying on the figures contained in the specification.  *Id*. at 12.  NecksGen argues Simpson "seeks to import limitations from the specification to restrict the scope of this clause to 'rear' and 'side' tethers."  *Id*.

First, the Court finds Simpson's proposed construction is consistent with the ordinary and customary meaning of the term as used in the specification.  Rather than seeking to "restrict" the scope of the clause, Simpson's construction clarifies it.  When Simpson argued for the same construction of this phrase in *Zamp*, the court noted the construction "meaningfully adds to the definition of the claim term because it describes

---

[2] *See also Zamp*, 2019 WL 1052031, at *13 (declining to construe "jointly attached" separately from the context of the phrase in which it appears).

the phrase in more precise terms, in a way that is consistent with the entire patent, without narrowing or expanding the claim scope." *Zamp*, 2019 WL 1052031, at *14. Put differently, Simpson's "construction…stays true to the claim language and most naturally aligns with the patent's description of the invention." *Phillips*, 415 F.3d at 1316 (*quoting Renishaw PLC v. Marposs Societa per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998) (citations omitted)). That construction "will be, in the end, the correct construction." *Id*.

Accordingly, the Court construes the entire phrase as *when attached to the helmet, the rear and side tethers attached to the helmet at a first common attachment location on a first side of the helmet and at a second common attachment location on the other side of the helmet, respectively.*

## 6. Support member

This term appears in each of the '529 Patent's independent claims, as well as in several of the dependent claims. Simpson argues this term should mean "the structure of the restraint device (other than a system of straps) that is attachable to the driver's helmet via the claimed system of tethers." Pl.'s Br., ECF No. 46 at 22. NecksGen argues the term should mean "a structure that has a shoulder portion positioned over the driver's shoulders and a back portion extending from a driver's shoulders down the driver's back and terminating near the bottom of the driver's shoulder blades." Def.'s Br., ECF No. 45 at 12-13.

NecksGen argues Simpson's construction is "impermissibly broad and not supported by the claims, specification, or the prosecution history." Def.'s Reply, ECF No. 50 at 5. It alleges Simpson is trying to "recapture claim scope that was disavowed during prosecution." *Id*.

During prosecution of the '529 Patent, the examiner issued a Restriction Requirement to the applicant requiring him to select one of the seven "species" (or forms)

9

1  of the claimed invention to begin the examiner's search for prior art.[3]  NecksGen argues

2  that the applicant's response to the Restriction Requirement made "a clear and

3  unambiguous disclaimer of inventions 2-7," which included embodiments of the

4  invention that did not include a "support member."  *Id*. at 8.

5      In support, NecksGen cites to an unpublished claims construction order in

6  *Automated Packaging Systems, Inc. v. Free Flow Packaging Int'l, Inc.*, 18-cv-00356-

7  EMC, Doc. No. 217 at 32 (N.D. Cal. Aug. 2, 2018).  There, the Court found an applicant

8  made an unambiguous disclaimer of other embodiments of the invention.  That case is

9  distinguishable.  In *Automated Packaging*, the applicant told the examiner he agreed to a

10 restriction request and selected a single embodiment of the invention.  *Id*.  Immediately

11 thereafter, the applicant stated, "Claims that do not read on the… embodiment illustrated

12 by [the non-selected figure] are canceled by this amendment."  *Id*.  The applicant plainly,

13 unambiguously, and unequivocally disclaimed the other embodiments.  By contrast, the

14 applicant here made the required election before *immediately* requesting the examiner

15 "*reconsider* the restriction requirement."  Def.'s Br., ECF No. 45, Ex. B, ECF. No. 45-2

16 at 94.

17     The prosecution history is informative, "[y]et because the prosecution history

18 represents an ongoing negotiation between the PTO and the applicant, rather than the

19 final product of that negotiation, it often lacks the clarity of the specification and thus is

20 less useful for claim construction purposes." *Phillips*, 415 F.3d at 1317.  Instead, the

21 Court is reminded "the specification….[is usually] dispositive; it is the single best guide

22 to the meaning of a disputed term."  *Id*. at 1315 (quoting *Vitronics*, 90 F.3d at 1582).

23     NecksGen overly relies on the election of a species, which here did not amount to

24 the surrender of claim scope.  The preferred embodiments of the '529 Patent indicate "the

25 length of the support member may vary," but never require a specific length or that a

26

27 _____

28 [3] In the '529 Patent, these "species" are represented by Figures 1, 5, 8, 11, 14, 16, and 19.

certain area of the driver's back be covered.  Col. 6:23-24.  Further, the specification describes two embodiments in which the support member is "a system of straps."  Col. 4:24-28.  Simpson's proposed construction therefore provides clarity to the fact finder and is supported by the ordinary meaning of the term found in the specification.  As the specification is "the single best guide to the meaning of a disputed term" the Court follows that guide here.  *Phillips*, 415 F.3d at 1321.

Accordingly, the Court construes the term "support member" as *the structure of the restraint device (other than a system of straps) that is attachable to the driver's helmet via the claimed system of tethers*.

**7.  Being disposed between shoulder belts of a seat belt assembly**

This phrase appears in independent claim 8 of the '529 Patent.  Simpson argues this phrase should mean "the side tethers are located within the side-to-side area of the restraint device bounded by the shoulder belts when the driver using the restraint device is seated."  Pl.'s Br., ECF No. 46 at 23.  NecksGen argues the phrase should mean "being disposed between the outer edge of the shoulder belts furthest away from the driver which is adjacent to the outer slip of the channel when the driver using the restraint device is seated."  Def.'s Br., ECF No. 45 at 16.

While the parties acknowledge these proposed constructions are similar, NecksGen argues its proposed construction will "provide clarity to this term by construing it to mean totally within the seatbelts – not partially.  *Id*. at 16-17.  Simpson alleges NecksGen "seeks to introduce additional limitations to the claim term that do not appear in the claim language itself."

The Court finds Simpson's construction is most grounded in the ordinary meaning of the claim language and will better support clarity for the fact finder.  Specifically, Simpson's proposed construction indicates "the side tethers are located *within* the side-to-side area of the restraint device," (emphasis added) which implies "totally within the seatbelts – not partially."

Accordingly, the Court construes the phrase "being disposed between shoulder belts of a seat belt assembly" as *the side tethers are located within the side-to-side area of the restraint device bounded by the shoulder belts when the driver using the restraint is seated*.

## 8. Principally without being laterally aligned

This phrase appears in independent claim 14 of the '529 Patent. Simpson argues this phrase should mean "extending generally vertically." Pl.'s Br., ECF No. 46 at 23. NecksGen argues this phrase does not require construction.

Simpson argues its proposed construction "would be beneficial to the trier of fact" and supports its argument with citation to the *Zamp* case. Pl.'s Br., ECF No. 46 at 24. The Court notes that *Zamp* involved competing constructions of this phrase, while in this case NecksGen argues the phrase does not require construction. 2019 WL 1052031, at *15-16; Def.'s Br., ECF No. 45 at 22. Nonetheless, the reasoning set forth in *Zamp* is instructive and sound.

Accordingly, the Court construes the phrase "principally without being laterally aligned" as *extending generally vertically*.

## 9. Helmet

The word "helmet" appears in each of the '529 Patent's independent claims, as well as several of the dependent claims. NecksGen argues this term should mean "any article wearable on a driver's head, with or without a hardened exterior shell." Def.'s Br., ECF No. 45 at 19. Simpson argues that the term does not need construction, as it is expressly defined in Column 4:38-45 of the '529 Patent.

NecksGen argues the expressly defined term is confusing, and that the specification offers a non-conventional definition of the term. Def.'s Br., ECF No. 45 at 18-19. NecksGen supports this argument by saying Simpson's reference to a particular skullcap sold by another company makes the term ambiguous and indefinite. Def.'s Br., ECF No. 45 at 18.

Simpson's citation to another skullcap, especially one that is contained in the "References Cited" of the '529 Patent, does not render the term confusing or indefinite. As discussed, "the specification 'acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication.'"  *Phillips*, 415 F.3d at 1321 (*quoting Vitronics*, 90 F.3d at 1582).  Here again, the Court is satisfied the '529 Patent has assigned its own meaning to the term "helmet" and that a fact finder does not need additional clarity in understanding the term as defined.

Accordingly, the Court declines to construe the term "helmet" as it has already been expressly defined in the '529 Patent as *the term "helmet', as used herein, includes any article wearable on a driver's head. For example, and not to be construed as being limiting, "helmet' includes conventional head protective devices, such as racing helmets having a hard exterior shell for protecting a driver's head against impact, and also articles that do not have a hardened exterior shell, Such as a skullcap, an example of which is sold by Speedway Safety Equipment of Hueytown, Ala.*

## II.   Stipulated Terms

The parties have stipulated to the meaning of "rigid," "pair of side tethers," and "tethers."  Joint Stip., ECF. No. 56 at 2.  Having considered the parties stipulations and for good cause shown, the Court adopts the stipulated constructions.  Accordingly, those claims will not be construed by the Court.

**IT IS SO ORDERED.**

Date: July 10, 2020

_____

HON. ROGER T. BENITEZ
United States District Judge